UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS SCOTT, | ) | |
| | ) | |
| Petitioner, | ) | 13 C 596 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| TARRY WILLIAMS, Warden, Stateville Correctional Center, | ) ) ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Dennis Scott, who is serving a lengthy sentence in Illinois state prison for first degree murder, burglary, and attempted robbery, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. After the Warden answered, Doc. 14, the court granted Scott's request for a copy of the state court record and for an extension of time to file a reply, Doc. 16, but Scott never filed a reply. Scott's petition is denied, and a certificate of appealability will not issue.

**Background**

**A.  Factual Background**

A federal habeas court presumes correct the factual findings made by the last state court to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("We give great deference to state court factual findings. After AEDPA, we are required to presume a state court's account of the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotation marks omitted); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). The Appellate Court of Illinois is the last state court to have adjudicated

Scott's criminal case on the merits. *People v. Scott*, 2011 IL App (1st) 100284-U (Ill. App. Aug. 5, 2011) (reproduced at Doc. 15-7); *People v. Scott*, No. 1-04-3487 (Ill. App. Aug. 14, 2006) (reproduced at Doc. 15-1). Scott does not argue, let alone show, that the presumption of correctness enjoyed by the appellate court's factual findings has been overcome. The following sets forth the facts as found by that court.

On May 16, 2001, Scott and Marcus Rhodes were walking around Scott's neighborhood when Scott entered an open garage looking for something to steal. Doc. 15-1 at 2. As the garage door closed, the eighty-five-year-old woman that lived in the home also entered the garage. *Ibid*. Scott murdered her. *Ibid*. The victim was discovered partially disrobed, and the medical examiner concluded her injuries were consistent with stomping. *Id*. at 3.

The police tracked Scott to his mother's home, placed him in handcuffs, swept the home for additional people, and then removed the handcuffs. *Id*. at 4-7, 9. The police asked for consent to search the home. *Id*. at 4-8, 10. According to Scott, he initially declined but ultimately succumbed because the officers said that they would get a search warrant and he was "frightened." *Id*. at 8. The police found and seized several items inside the home, including white shoes with a blood stain. *Id*. at 10.

After the search, Scott agreed to accompany Detective Sevik and Sergeant Feldman in a patrol car to find Rhodes. *Id*. at 10, 15. Scott and the two officers were unable to locate Rhodes and went to the Oak Lawn police station. *Id*. at 10. Detective Palmer joined Detective Sevik, and the two questioned Scott in a conference room for an hour. *Id*. at 11. Scott received his *Miranda* warnings before the questioning began, but he was told that he was not yet under arrest. *Ibid*. During the questioning, Scott stated "that maybe he would talk to his attorney," after which all questioning ceased and Scott was taken to the "lockup area." *Id*. at 15. The detectives placed

Scott under arrest based on several witness accounts, the bloody shoe, and other evidence that the police had discovered. *Id*. at 12, 15.

In the lockup area, Scott said that he wanted to speak to Sevik and Palmer again. *Id*. at 15. Scott was told that because he had requested an attorney, the police could not speak to him unless he initiated the conversation. *Id*. at 15-16. Scott reassured them that he wanted to talk to the officers without an attorney. *Id*. at 15. Scott was again read his *Miranda* warnings, and he signed a *Miranda* waiver. *Id*. at 15-17. Scott then confessed to the crime. *Ibid*. After another set of *Miranda* warnings, a state prosecutor took a written statement. *Id*. at 14-15, 17. Scott's testimony at his suppression hearing recalled things differently, *id*. at 13-14, but the state trial court did not credit his testimony, *id*. at 18, and the state appellate court affirmed the trial court in this respect, *id*. at 29-30, 32-33.

### B. Procedural Background

#### 1. Trial and Direct Review

Scott filed motions to quash his arrest and suppress evidence, which the trial court denied in written orders. Doc. 15-2 at 75-91. Scott was convicted at trial. During sentencing, the prosecution noted that the victim was partially disrobed and suggested that Scott was committing "a rape that got interrupted" when someone walked in. Doc. 15-1 at 21. Scott received a sixty-year sentence for first degree murder and seven-year sentences for burglary and attempted robbery, with the seven-year terms running concurrently with each other and consecutive to the sixty-year sentence. Doc. 15-1 at 25; Doc. 15-2 at 95.

Scott appealed his conviction, raising four arguments: (1) that the trial court erred in not suppressing the evidence discovered during the search; (2) that the trial court erred in not quashing his arrest, which occurred (according to Scott) when he was in the squad car; (3) that

the trial court erred in not suppressing the statements he made after he requested counsel; and (4) that the sentence was excessive because the trial court did not consider his rehabilitative potential and relied on improper statements by the prosecutor. Doc. 15-2. The Appellate Court of Illinois rejected Scott's claims and affirmed. Doc. 15-1. Scott pressed the same claims in a petition for leave to appeal ("PLA") to the Supreme Court of Illinois. Doc. 15-5. The PLA was denied. *People v. Scott*, 871 N.E.2d 60 (Ill. 2007).

### 2. Post-Conviction Review

Scott filed a pro se post-conviction petition in the state trial court under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, arguing his trial and appellate counsel were ineffective. Doc. 15-15 at 62-65. Scott eventually retained counsel and filed an amended petition, which raised two arguments: (1) a lengthy argument that the prosecutor's improper comments denied him a fair trial and due process; and (2) a one-paragraph, three-sentence conclusory argument stating, without elaboration, that counsel was ineffective. *Id*. at 194-198. In response to a question from the trial court, post-conviction trial counsel confirmed that the amended petition superseded Scott's *pro se* petition. Doc. 15-7 at 5-6. The post-conviction trial court denied the petition. *Id*. at 7.

On post-conviction appeal, Scott, again through counsel, raised one claim: that the trial court erroneously limited its review of his ineffectiveness claim to the three-sentence argument in the amended post-conviction petition without considering the ineffectiveness allegations in Scott's original pro se petition. Doc. 15-8 at 21-28. The appellate court affirmed. Doc. 15-7. Scott raised the same claim in a counseled PLA, Doc. 15-10, which was denied. *People v. Scott*, 963 N.E.2d 250 (Ill. 2012).

**Discussion**

Scott's habeas petition asserts seven grounds for relief: (1) that the trial court violated his Fourth Amendment rights by not quashing his arrest and suppressing the evidence found during the search of his mother's home; (2) that the prosecutor made inflammatory remarks during closing argument in violation of the Fourteenth Amendment; (3) that the incriminating statements he made after requesting an attorney should have been suppressed under the Sixth and Fourteenth Amendments; (4) that his direct and post-conviction appellate counsel were ineffective because they failed to adequately raise certain issues; (5) that the trial court abused its discretion in sentencing him by failing to consider his rehabilitative potential and by relying on improper evidence; (6) that he was denied his Fourteenth Amendment right to a fair trial because the trial court failed to quash his arrest, to suppress illegally seized evidence, and to suppress his post-arrest statements; and (7) his trial counsel was ineffective in failing to effectively pursue certain pretrial motions. Doc 1 at 5-10. The sixth claim is duplicative of the first and third claims and will not be considered separately.

**I.      Procedurally Defaulted Claims**

"To preserve a question for federal collateral attack, a person must present the contention to each level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)). Accordingly, "[a] procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted). Procedural default also prohibits federal court review of "a claim which was presented to the state courts but which was rejected on an independent and adequate state ground." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010)

(citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).  The Warden argues that Scott's second, fourth, and seventh claims, and portions of his third claim, are procedurally defaulted.  The Warden is correct with the exception of part of the fourth claim, though it does not matter because that particular issue is noncognizable on federal habeas review.

The second habeas claim contends that the prosecutor's inflammatory remarks during closing argument violated the Fourteenth Amendment.  Doc 1 at 5-6.  Scott did not raise this claim on direct review in either the state appellate court or the state supreme court.  Docs. 15-2, 15-5.  Although Scott did raise the clam in his amended post-conviction petition, Doc. 15-15 at 195-98, he did not press it on post-conviction appeal or in his post-conviction PLA.  Docs. 15-8, 15-10.  It follows that the second claim is procedurally defaulted.  *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012) (finding procedural default where the petitioner raised a claim in the state post-conviction trial court but not in the post-conviction appellate court); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003) (finding procedural default where the petitioner "raised the ex post facto claim in his state habeas corpus petition in the circuit court, but abandoned it in his appeal to the appellate and supreme courts"); *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) ("Howard presented his current claim to the state trial court, but by changing the basis of his argument between the trial court and the appellate court, Howard did not fairly present the question of ineffective assistance of trial counsel to the Illinois Appellate Court.  Accordingly, he has procedurally defaulted that claim.").

The third habeas claim contends that the inculpatory statements that Scott made after he requested an attorney should have been suppressed.  Doc. 1 at 7.  On direct appeal, Scott argued that "officers improperly initiated further conversation with Mr. Scott after he invoked his right to counsel and officers made statements and took actions reasonably likely to elicit an

incriminating response from Mr. Scott." Doc. 15-2 at 42. The Warden acknowledges that this argument is not procedurally defaulted. Doc. 14 at 13. However, noting the state appellate court's ruling on direct appeal that Scott "abandoned his claim, made [in the trial court], that the police ignored his repeated requests for counsel," Doc. 15-1 at 32, the Warden submits that "to the extent [c]laim [t]hree argues that petitioner is entitled to habeas relief [for that reason], it is procedurally defaulted." Doc. 14 at 12.

Procedural default applies to each argument as to how a constitutional right was violated. *See Suh v. Pierce*, 630 F.3d 685, 691 (7th Cir. 2011) (finding procedural default of an appearance of judicial bias claim where the petitioner argued only actual bias in the state courts); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (finding procedural default where, "although Stevens presented his ineffectiveness claim to the state courts, he never presented as a supporting argument the lawyers' failure to raise the GBMI [guilty but mentally ill] defense at trial"). The state appellate court's conclusion that Scott abandoned the argument that "the police did not honor petitioner's request for counsel" is an adequate and independent ground to reject the argument on federal habeas review. *See Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (holding that the Illinois doctrine of waiver constitutes an adequate and independent state law ground); *Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997) ("Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court.").

The fourth and seventh habeas claims argue that trial counsel, direct review appellate counsel, and post-conviction appellate counsel were ineffective. Doc. 1 at 7-10. In his pro se post-conviction petition, Scott argued his trial counsel and direct review appellate counsel were ineffective. Doc. 15-15 at 62-65; *see also* Doc. 15-7 at 3-4. As noted above, Scott (through

retained counsel) filed an amended petition that superseded rather than supplemented the pro se petition. Doc. 15-7 at 4-6. As the state appellate court noted, the "prevailing issue" in the amended petition argued the prosecutor's remarks deprived Scott of a fair trial. *Id*. at 5; *see* Doc. 15-15 at 195-98. The amended petition also included a three-sentence paragraph titled "counsel was ineffective"; as the appellate court observed, that paragraph merely "articulat[ed] the two-prong test defendant must meet [under] *Strickland v. Washington*, 466 U.S. 668 (1984)," without explaining *how* counsel was ineffective. Doc. 15-7 at 5; *see* Doc. 15-15 at 198-99. The post-conviction trial court reached the merits of that claim, concluding that Scott presented no facts to support it. Doc. 15-7 at 7.

On post-conviction appeal, Scott raised a single claim: that the state court erred in not considering the facts alleged in the pro se petition's ineffectiveness claim and in limiting its consideration to the ineffective assistance submissions in the amended petition. Doc. 15-8 at 22-28. Scott's counseled appellate brief did not make the *substantive* argument that his Sixth Amendment right to the effective assistance of counsel was violated; rather, the brief argued only that the trial court erred procedurally under the Illinois Post-Conviction Hearing Act by disregarding the ineffective assistance allegations in Scott's pro se petition. *Ibid*. The post-conviction appellate court rejected Scott's claim. The appellate court first ruled that the trial court correctly disregarded the allegations in Scott's pro se petition because, under settled Illinois law, retained counsel's amended post-conviction petition had superseded the pro se petition. Doc. 15-7 at 9-11. The appellate court then ruled that the "nonspecific and nonfactual assertions" in the amended post-conviction petition "failed to sufficiently state a constitutional claim of ineffective assistance of counsel." *Id*. at 10-11.

The Warden argues that the ineffective assistance claims are procedurally defaulted. Doc. 14 at 23-26, 32. The Warden is correct with respect to the ineffective assistance allegations in the pro se post-conviction petition. Those allegations were rejected on an independent and adequate state ground—that a post-conviction petitioner is limited to the arguments made in an amended petition. "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012); *see also Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2012). The post-conviction appellate court clearly explained how its holding was supported by established precedent, satisfying this standard:

> Our supreme court has long held that where an amended post-conviction petition filed by counsel does not contain allegations of ineffective assistance of counsel that were raised in defendant's initial *pro se* petition, such allegations are no longer before the circuit court. *People v. Phelps*, 51 Ill.2d 35, 38 (1972). An amended post-conviction petition supersedes defendant's original *pro se* petition such that any claims not included in the amended petition are not properly before the circuit court. *See People v. Pinkonsly*, 207 Ill.2d 555, 566-67 (2003), citing *Phelps* and *Barnett v. Zion Park District*, 171 Ill.2d 378, 384 (1996) ("Where an amended pleading is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes and is effectively abandoned and withdrawn").

Doc. 15-7 at 9.

The very short ineffectiveness claim in the amended post-conviction petition also is procedurally defaulted. Scott did not press a substantive ineffective assistance argument in the appellate court; all he argued was that the trial court erred as a matter of state procedure in ignoring the ineffective assistance allegations in the pro se petition. However, the post-conviction appellate court appeared to consider and resolve the substantive ineffectiveness issue on the merits, holding that "the amended petition failed to sufficiently state a constitutional claim of ineffective assistance of counsel." Doc. 15-7 at 11. The appellate court's consideration of the

9

issue on the merits saved Scott from a procedural default, at least at that level. *See Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (holding that procedural default did not apply, even though "the state [appellate] court held that Pole did not adequately raise the issue of trial counsel's ineffectiveness," because the appellate court nonetheless reached the merits). The problem is that Scott did not raise a substantive ineffective assistance argument in his post-conviction PLA; rather, he simply repeated (almost verbatim) the state law procedural issue he presented to the appellate court. Accordingly, the amended petition's ineffective assistance argument is procedurally defaulted as well. *See Crockett*, 542 F.3d at 1193 (finding procedural default where, "[a]lthough Crockett was aware of a heightened burden of proof for constitutional violations because he addressed it in his brief to the Illinois Appellate Court, he did not inform the Illinois Supreme Court of his basis for the claim now presented on habeas review in a manner sufficient for the Illinois Supreme Court to address it in the first instance"); *Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005) ("indeed, even if Hayes had presented the point to the appellate court it still would have been forfeited by omission from a request for review by the Supreme Court of Illinois"); *Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005) ("It appears that Robert did raise this issue in his initial brief before the Wisconsin Court of Appeals. Robert, however, never presented the [issue] to the Wisconsin Supreme Court in his petition for that court to review the decision of the Wisconsin Court of Appeals. While the Wisconsin Supreme Court denied his petition for review, Robert was still required to present the issue to it.") (alteration in original).

It is unclear whether procedural default bars the part of the fourth claim alleging that Scott's post-conviction appellate counsel was ineffective; after all, Scott could hardly have raised that issue through one full round of state court review, and the attorney representing Scott in the

post-conviction appellate court also filed his post-conviction PLA. The point is immaterial because the claim is noncognizable on federal habeas review. "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009); *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996).

A habeas petitioner may overcome a procedural default (1) by demonstrating cause for the default and actual prejudice, or (2) by showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith*, 598 F.3d at 382. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins*, 698 F.3d at 987 (citations and internal quotation marks omitted). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Smith*, 598 F.3d at 387-88 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Because Scott does not argue that either exception to the procedural default rule applies here, any such argument is forfeited. *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (holding the petitioner bears the burden of

proving an exception to procedural default); *Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) ("[P]rocedural default will be excused if a defendant can show that a failure to review the defendant's claims would result in a fundamental miscarriage of justice. Franklin, however, does not make this argument and we will not make it for him.") (citation omitted).

## II.  Noncognizable Claims

Scott's first habeas claim submits that that the trial court violated his Fourth Amendment rights by not quashing his arrest and suppressing the evidence found in his mother's home. Doc. 1 at 5-6. This claim is not cognizable on federal habeas review. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Seventh Circuit has explained that "a 'full and fair opportunity' guarantees only 'the right to present one's case.'" *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (quoting *Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003)). Put another way, a "full and fair" hearing occurs when the defendant is allowed to present his case in a proceeding that is not a "sham." *Cabrera*, 324 F.3d at 531-32; *see also Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005) ("a [Fourth Amendment] blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment") (internal quotation marks omitted).

Scott received a fair opportunity to present his Fourth Amendment claim, and he does not, and could not, argue otherwise. Scott filed two Fourth Amendment motions to suppress, which the state trial court denied in detailed and well-reasoned written orders. Doc. 15-2 at 75-

85; *see* Doc. 15-1 at 9, 12. The appellate court comprehensively addressed Scott's Fourth Amendment claims on direct appeal, relying on state court authorities setting forth the relevant Fourth Amendment principles. Doc. 15-1 at 26-32. This satisfies *Stone*'s "full and fair opportunity" requirement. *See Miranda*, 394 F.3d at 999 (holding that under *Stone*, a federal court may consider a Fourth Amendment habeas claim on the merits only if the state court "closed its ears and mind to argument") (alterations omitted); *Cabrera*, 324 F.3d at 531 (holding that a federal court faced with a *Stone*-barred issue should not "examine whether the [state] judge seemed to have done some quality preparation for the hearing or had a perfect understanding of the fine points of search and seizure law"). Accordingly, *Stone* precludes this court from considering the merits of Scott's Fourth Amendment claims. *See Monroe v. Davis*, 712 F.3d 1106, 1116 (7th Cir. 2013) ("Both the trial and appellate courts took the claim seriously, and although the trial court, in resolving the claim, committed a significant error as to the timing of Monroe's arrest, the appellate court's analysis did not repeat the error."); *Serio v. Pfister*, 2013 WL 593824, at *3 (N.D. Ill. Feb. 14, 2013).

Scott's fifth habeas claim, that the trial court "abused its discretion when sentencing" him because it "ignored [his] rehabilitative potential" and "considered an improper statement by the state's attorney in aggravation," Doc. 1 at 8, also is noncognizable. At bottom, the claim is that the trial court made errors of state law. Doc. 15-2 at 46-49. In his initial brief on direct appeal, which sets forth the argument in greater detail than in the federal habeas petition, Scott premised his first sentencing argument on article I, section 11, of the Illinois Constitution, which requires that "all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *Id*. at 46-47 (arguing that *People v. Harris*, 543 N.E.2d 859 (Ill. App. 1989), requires the state trial court to balance a sentence's

13

retributive goals with the potential that a "reduced sentence will allow a defendant at least the possibility of being restored to a meaningful productive life"). Scott's second sentencing argument on direct appeal was that the trial court improperly considered the prosecutor's argument that Scott had been in the process of sexually assaulting the victim before the murder. This also argument alleges an error of state law. *Id*. at 47-49. Neither of the two sentencing arguments is cognizable on federal habeas review. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (internal quotation marks omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

It is true that alleged errors of state law can implicate the Fourteenth Amendment due process right to a fundamentally fair trial. *See Perruquet*, 390 F.3d at 511; *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003). But to pursue that ground for habeas relief, the petitioner must "draw[] enough connection between his right to due process and the trial court's (alleged) [state law] errors to render the claim cognizable on habeas review." *Perruquet*, 390 F.3d at 512. Scott fails to even refer a constitutional right in his fifth habeas claim, let alone explain the factual predicate for one. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1144-45 (7th Cir. 2009). He therefore has failed to transform his state law claim into a due process claim.

### III. Claims Considered on the Merits

The third habeas claim, that the Sixth and Fourteenth Amendments required suppression of the incriminating statements that Scott made after requesting an attorney, Doc. 1 at 7, is cognizable and not procedurally defaulted, so it must be resolved on the merits. "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state

14

court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (one citation omitted). Scott does not seek relief under § 2254(d)(2). With respect to § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002); *see also Brown v. Finnan,* 598 F.3d 416, 421-22 (7th Cir. 2010). "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785 (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 786 (internal quotation marks omitted). Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

Scott argues that his Sixth Amendment right to counsel was violated when the police questioned him after he requested an attorney. Doc. 1 at 7. In rejecting that claim, the state appellate court articulated the correct standard: "an accused, … having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further

15

communication, exchange or conversations with the police." Doc. 15-1 at 33; *see Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The appellate court further held, again correctly, that an accused is not entitled to the protection of *Edwards* unless the accused "unambiguously request[s] counsel." Doc. 15-1 at 33; *see Davis v. United States*, 512 U.S. 452, 458-59 (1994) ("[t]he applicability of the rigid prophylactic rule of *Edwards* requires courts to determine whether the accused *actually invoked* his right to counsel," which means that "the suspect must unambiguously request counsel"). The appellate court reasonably adopted the trial court's factual finding that Scott "stated that he *might* need to speak with an attorney." Doc. 15-1 at 32-33 (citing Sevik's and Palmer's testimony). And the appellate court reasonably rejected Scott's *Edwards* claim because his equivocal statement regarding counsel failed the threshold requirement that he have unambiguously requested counsel. *Id*. at 33.

The state appellate court's ruling was neither contrary to nor an unreasonable application of Supreme Court precedent. Police have no obligation to stop questioning a suspect unless he "unambiguously" invokes his right to counsel. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). Indeed, *Davis* addressed a situation comparable to Scott's: the Supreme Court refused to apply *Edwards* where the defendant stated "[m]aybe I should talk to a lawyer," holding that this ambiguous statement did not obligate the police to cease questioning. 512 U.S. at 462. Given the similarity Scott's statement and the statement in *Davis*, the appellate court cannot be said to be an objectively unreasonable application of Supreme Court precedent.

This case presents one wrinkle. After Scott stated he might need to talk to an attorney, the police immediately stopped their questioning, arrested him, and told him that he needed to initiate any additional conversation because he had requested an attorney. Doc. 15-1 at 15. This sequence of events suggests that the police subjectively believed that Scott had adequately

16

invoked his right to counsel. However, settled precedent holds that an objective analysis, not the officers' subjective beliefs, governs whether a suspect has invoked his right to counsel. *See Berghuis*, 560 U.S. at 381 ("A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity.") (internal quotation marks and alterations omitted); *Davis*, 512 U.S. at 458-59 (same); *United States v. Wysinger*, 683 F.3d 784, 793-94 (7th Cir. 2012) (same); *United States v. Hampton*, 675 F.3d 720, 727 (7th Cir. 2012) (same). It therefore does not matter whether the officers believed that Scott sufficiently invoked his right to counsel or proceeded as if he had.

For the sake of completeness, and in the event the procedural default ruling on the claim is open to doubt, the court will consider the merits of the ineffective assistance claim from Scott's amended post-conviction petition. The amended petition's ineffective assistance argument reads, in its entirety, as follows:

> Defendants have a sixth amendment right to effective assistance of counsel at all critical stages of the criminal process. *Strickland v. Washington*, 466 U.S. 668 (1984)[.] In order for a defendant to establish that there was a denial of the right to effective assistance of competent counsel, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Doc. 15-15 at 198 (internal quotation marks omitted). The post-conviction appellate court correctly held because that argument was "devoid of any factual allegations or legal argument," it failed to make out a viable ineffective assistance claim. Doc. 15-7 at 11. Without facts or legal argument supporting the claim, the appellate court had no basis to conclude Scott had been deprived of his right to the effective assistance of counsel. That ruling was not unreasonable.

**Conclusion**

For the forgoing reasons, Scott's petition for a writ of habeas corpus is denied. Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). The applicable standard is as follows:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that ... includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Lavin*, 641 F.3d at 832; *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

This court's denial of Scott's federal habeas claims relies on settled precedents and principles. The application of those precedents and principles to Scott's petition does not present difficult or close questions, and so the petition does not meet the applicable standard for granting a certificate of appealability. The court therefore denies a certificate of appealability.

June 6, 2014

United States District Judge